UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **EDCV 17-867 JGB (KKx)** | Date | June 22, 2017 |
| Title | ***Belen Torrez v. Freedom Mortgage, Corp. et al.*** | | |

Present: The Honorable    JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

Attorney(s) Present for Plaintiff(s):      Attorney(s) Present for Defendant(s):

None Present      None Present

**Proceedings:**    **Order (1) DENYING Plaintiff Belen Torrez's Motion to Remand (Dkt. No. 10); and (2) VACATING the hearing on June 26, 2017 (IN CHAMBERS)**

Before the Court is Plaintiff Belen Torrez's Motion to Remand. (Dkt. No. 10.) The Court finds this matter appropriate for resolution without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15. After consideration of the papers filed in support of, and in opposition to the motion, the Court DENIES the motion.

**I.   BACKGROUND**

On April 3, 2017, Plaintiff Belen Torrez ("Plaintiff") filed this putative class action complaint against Defendants Freedom Mortgage Corporation ("FMC") and Does 1 through 100 (collectively, "Defendants") in the Superior Court for the County of San Bernardino. ("Complaint," Dkt. No. 1-2.) Plaintiff brings this action on behalf of herself and "[a]ll current and former hourly-paid employees who worked for any of the Defendants within the State of California at any time during the period from four years preceding the filing of this Complaint to final judgment." (Compl. ¶ 12.) The Complaint advances multiple claims under California law: (1) unpaid overtime; (2) unpaid meal period premiums; (3) unpaid rest period premiums; (4) unpaid minimum wages; (5) final wages not timely paid; (6) non-compliant wage statements; (7) unreimbursed business expenses; and (8) violation of the California Business and Professions Code, §§ 17200, et seq. (Compl. ¶¶ 43-101.)

Plaintiff asserts FMC employed her as an hourly-paid, non-exempt employee from approximately July 2015 through September 2016. (Compl. ¶¶ 17-18.) Plaintiff alleges during the time of her employment, FMC failed to compensate her and other similarly situated employees for all hours worked, missed meal periods, and/or rest breaks. (Id. ¶ 19.) Plaintiff claims FMC is engaged in a pattern and practice of wage abuse against its hourly-paid or non-exempt employees in California. (Id. ¶ 25.) Plaintiff alleges she and the other class members are entitled to all applicable penalties under California law for missed rest and meal periods. (Id. ¶ 27.) Plaintiff further alleges she and other putative class members were not provided complete and accurate wage statements, and were not paid all wages owed upon discharge or resignation from FMC. (Id. ¶¶ 32, 38.)

FMC removed the action to this Court on May 4, 2017. ("Notice of Removal," Dkt. No. 1.) FMC asserted jurisdiction under the Class Action Fairness Act ("CAFA"). Plaintiff then filed the present Motion to Remand ("Motion") on May 24, 2017. ("Motion," Dkt. No. 10.) FMC opposed the Motion on June 5, 2017. ("Opposition," Dkt. No. 16.) Plaintiff filed its reply memorandum on June 12, 2017. ("Reply," Dkt. No. 15.)

## II. LEGAL STANDARD

"Federal courts are courts of limited jurisdiction, possessing only that power authorized by the Constitution and statute." Gunn v. Minton, 133 S. Ct. 1059, 1064 (2013). CAFA vests federal courts with original jurisdiction over class actions involving at least 100 class members, minimal diversity, and an amount in controversy that exceeds $5,000,000. 28 U.S.C. § 1332(d).

Generally, courts must "strictly construe the removal statute against removal jurisdiction." Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992). "However, 'no anti-removal presumption attends cases invoking CAFA . . . .'" Garcia v. Wal-Mart Stores, Inc., No. CV 16-01645-BRO (RAO), 2016 WL 6068104, at *3 (C.D. Cal. Oct. 14, 2016) (quoting Dart Cherokee Basin Operating Co., LLC v. Owens, 135 S. Ct. 547, 553 (2014)). Instead, Congress intended CAFA to be interpreted expansively. Ibarra v. Manheim Investments, Inc., 775 F. 3d 1193, 1197 (9th Cir. 2015).

A defendant seeking removal of an action to federal district court need only offer a "short and plain statement of the grounds for removal" in its notice of removal. 28 U.S.C § 1446(a). To meet CAFA's diversity requirement, a removing defendant must show "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A). "Thus, under CAFA complete diversity is not required; 'minimal diversity' suffices." Serrano v. 180 Connect, Inc., 478 F.3d 1018,1021 (9th Cir. 2007) (citations omitted).

To satisfy CAFA's amount-in-controversy requirement, "a removing defendant must plausibly assert that the amount in controversy exceeds $5,000,000." Garcia 2016 WL 6068104, at *3 (citing Ibarra, 775 F. 3d at 1197). A removing "defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court." Dart, 135 S. Ct. at 553. Where plaintiff questions the amount in controversy asserted, evidence

establishing that the amount alleged meets the jurisdictional minimum is required. Id. at 554. "In such a case, both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." Id. at 554.

"The parties may submit evidence outside the complaint, including affidavits or declarations, or other 'summary-judgment-type evidence relevant to the amount in controversy at the time of removal.'" Ibarra, 775 F.3d at 1197 (quoting Singer v. State Farm Mut. Auto. Ins. Co., 116 F.3d 373, 377 (9th Cir. 1997)). "Under this system, CAFA's requirements are to be tested by consideration of real evidence and the reality of what is at stake in the litigation, using reasonable assumptions underlying the defendant's theory of damages exposure." Id. at 1198.

### III. DISCUSSION

Plaintiff seeks to remand this action to state court. (See generally Mot.) The parties do not dispute the putative class is comprised of more than 100 members and the parties are minimally diverse as required by 28 U.S.C. § 1332(d)(2). Rather, Plaintiff moves to remand on the ground that FMC failed to prove by a preponderance of the evidence that the amount in controversy exceeds the $5,000,000 jurisdictional minimum. (Mot. at 1.)

In the Notice of Removal ("NOR"), FMC alleges the amount in controversy requirement under CAFA is satisfied because the maximum potential value of three of Plaintiff's eight claims, when aggregated, places at least $8,300,000 in controversy. (NOR ¶¶ 22-41.) Those three claims are Plaintiff's first cause of action for unpaid overtime violations, second cause of action for meal period violations, and sixth cause of action for failure to provide accurate itemized wage statements. (Id. ¶¶ 31-41.) In the Opposition, FMC asserts the amount in controversy exceeds $11,000,000 when considering five of Plaintiff's eight claims, including Plaintiff's first cause of action for unpaid overtime violations, second cause of action for meal period violations, third cause of action for rest period violations, fifth cause of action for waiting time penalties, and sixth cause of action for failure to provide accurate itemized wage statements. (Opp'n at 10-18.) FMC maintains that whether or not attorney's fees are considered, the requisite $5,000,000 amount in controversy requirement under CAFA is satisfied. (Id. at 18.)

In calculating the amount in controversy, FMC relies on two declarations of Charles Spector, FMC's Vice President of Human Resource Operations. ("Spector Decl. #1," Dkt. No. 1-3.) Based on his review of FMC payroll records and reports from the UltiPro electronic software, Spector submits FMC employed at least 600 non-exempt employees in California from April 3, 2013 through the present, approximately 98% of which worked full time i.e., were regularly scheduled to work 8 hours per day, 40 hours per week. (Id. ¶¶ 2-3; Spector Decl. #2 ¶ 4.) Of the 600 non-exempt California employees, 300 are former employees who have separated—approximately 95% of which were full time. (Spector Decl. #1 ¶ 3; Spector Decl. # 2 ¶ 5.) Pursuant to the hire and termination dates of these employees, Spector represents said employees worked approximately 60,000 aggregate work weeks at an average hourly rate of $21.00. (Spector Decl. #1 ¶¶ 4-5.) Spector also submits FMC employed at least 500 non-

exempt employees in California from April 3, 2016 to present, who received 13,177 wage statements during that time period. (Id. ¶ 6; Spector Decl. #2 ¶ 3.)

Assuming that each class member worked three hours of overtime and missed two meal periods and two rest breaks per week, FMC estimates the following: (1) the amount of overtime penalties at issue to be more than $3,780,000 ($21.00 per hour x 1.5 x 3 overtime hours per week x 60,000 weeks worked by the putative class in the four years preceding the Complaint); (2) the attorney's fees associated with Plaintiff's overtime claim to be $756,000 (.20 x $3,780,000); (3) the amount of meal period violations at issue to be $2,520,000 (two meal period premiums per week x 60,000 work weeks x $21.00 per hour); (4) the amount of rest break violations at issue to be $2,520,000 (two rest break premiums per week x 60,000 work weeks x $21.00 per hour); (5) the amount of non-compliant wage statement violations at issue to be $2,000,000 ($4,000 x 500 class members working in the last year); and (6) the amount of waiting time penalties at issue to be $1,512,000 ($50 each for 500 initial violations ($250,000) plus $100 each for 12,677 subsequent violations (($1,267,700)). (NOR ¶¶ 32, 33, 36, 40; Opp'n at 10-18.)

FMC's violation rate assumptions are based on the allegations in the Complaint. FMC maintains Plaintiff asserts nearly uniform wage and hour violations as evidenced by allegations that state FMC "engaged in a pattern and practice of wage abuse against their hourly-paid or non-exempt employees . . . ." (Compl. ¶ 25.) The Complaint also alleges FMC failed to pay "Plaintiff and the other class members" for all regular and/or overtime wages earned and missed meal periods, among other things, in violation of California law. (See, e.g., id. ¶¶ 27, 35, 36, 59, 60.)

In the Motion, Plaintiff argues FMC's assumptions are speculative and "serve no purpose other than to artificially inflate the amount in controversy for jurisdictional purposes." (Mot. at 2.) Plaintiff contends FMC "omits the number or percentage of class members employed part-time as opposed to full-time," "fails to identify the average number of hours worked per day by class members," and does not "account for sick, vacation, and other leave of absences of class members during this period." (Id. at 1.) Instead, FMC "simply assumes every class member worked every day during their employment with [FMC]" and that there was "a 100% violation rate of (3) hours of unpaid overtime and two (2) meal period violations per week." (Id. at 1-2.) Additionally, Plaintiff contends FMC's amount in controversy improperly includes attorney's fees that have not yet been incurred. (Id. at 10.)

When, as here, a defendant's asserted amount in controversy is challenged by a motion to remand, the Court must decide, based upon evidence submitted, whether the amount in controversy requirement has been satisfied by a preponderance of the evidence. While "[t]here is limited appellate guidance on how district courts should interpret the evidence presented by the parties," (Salcido v. Evolution Fresh, Inc., No. 2:14-cv-09223-SVW-PLA, 2016 WL 79381, at *4 (C.D. Cal. Jan 6, 2016)), "[w]hen a party relies on a chain of reasoning that includes assumptions, those assumptions must be reasonable." Ibarra, 775 F.3d at 1199 (stating assumptions "cannot be pulled from thin air but need some reasonable ground underlying them").

As an initial matter, the Court addresses Plaintiff's objection to Spector's first declaration. (See Mot. at 6-7.) Plaintiff argues the first Spector Declaration does not provide an adequate foundation and violates Federal Rule of Evidence 1002, the Best Evidence Rule. (Id. at 7.) First, the Court finds the foundation sufficient. Spector states he is the Vice President of Human Resource Operations, and in that position he has access to certain employee-related information through UtilPro software, including personnel files and payroll records, which he accesses through his regular course of business activities. (Spector Decl. ¶ 2.) Spector also states he reviewed payroll records and reports regarding FMC's non-exempt California employees for the time period of April 3, 2013 to present. (Id.) Second, Spector's declaration testimony is not being offered to establish the content of a particular writing. Therefore, the Court OVERRULES Plaintiff's objections.

Next, the Court turns to FMC's calculation of the amount in controversy. The Court's analysis of the assumptions underlying FMC's calculation begins with the Complaint. Plaintiff alleges FMC "engaged in a pattern and practice of wage abuse against its hourly-paid or non-exempt employees within the state of California." (Compl. ¶ 25.) The Ninth Circuit has concluded "that a 'pattern and practice of doing something does not necessarily mean always doing something.'" Ibarra, 775 F.3d at 1198-99. Here, Plaintiff does not specifically allege the "pattern and practice of wage abuse" is universal or even suffered by "all of" or the "entirety" of the putative class; rather, Plaintiff's allegations are generalized and indeterminate, providing no indication of the frequency or severity of the violations alleged.

"Where the complaint contains generalized allegations of illegal behavior, a removing defendant must supply 'real evidence' grounding its calculations of the amount in controversy." Duberry v. J. Crew Grp., Inc., No. 2:14-cv-08810-SVW-MRW, 2015 WL 4575018, at *2 (C.D. Cal. July 28, 2015) (citing Ibarra, 775 F.3d at 1199). "[A] defendant may establish the amount in controversy by relying on admissible statistical evidence taken from a representative sample and extrapolated to calculate the potential liability for the full class." Id. (citing LaCross v. Knight Transp. Inc., 775 F.3d 1200, 1202-09 (9th Cir. 2015)). However, a defendant is "not required to comb through the records to identify and calculate the exact frequency of violations." Salcido v. Evolution Fresh, Inc., No. 2:14-CV-09223-SVW-PLA, 2016 WL 79381, at *6 (C.D. Cal. Jan. 6, 2016).

In this case, FMC offers sufficient evidence in support of its calculations. Relying on data from its payroll records, FMC offers evidence of the number of employees that constitute the putative class, their average hourly rate of pay, the number of weeks worked during the class period, and the number of wage statements issued. Based on that evidence, FMC makes reasonable assumptions to calculate the potential liability of the purported class. Accord Unutoa v. Interstate Hotels and Resorts, Inc., No. 2:14-cv-09809-SVW-PJW, 2015 WL 898512, at *3 (C.D. Cal. Mar. 2, 2015) (finding defendant's evidence, which consisted of a declaration by a Payroll Supervisor stating the number of employees employed during the class period typically worked eight hour shifts, supportive of assumed rates of violation).

Additionally, Plaintiff's allegations as to each claim considered by FMC in calculating the amount in controversy are susceptible to broad interpretations which further support the reasonableness of FMC's assumptions. For example, with respect to the unpaid overtime claim, the Complaint alleges "Plaintiff and the other class members were required to work more than eight (8) hours per day and/or forty (40) hours per week without overtime compensation." (Compl. ¶ 35.) As pleaded, Plaintiff alleges she and the other class members suffered violations either each day and each week, or each day or each week. Either way, such an allegation implies a nearly 100% violation rate on one of the variables. Consider also Plaintiff's waiting-time penalty allegations. The Complaint states, "[FMC] knew or should have known that Plaintiff and the other class members were entitled to receive all wages owed to them upon discharge or resignation . . . and they did not, in fact, receive all wages owed to them at the time of their discharge or resignation." (Compl. ¶ 38.) The Complaint also states, "[d]uring the relevant time period, [FMC] intentionally and willfully failed to pay Plaintiff and the other class members who are no longer employed by [FMC] their wages, earned and unpaid, within seventy-two (72) hours of their leaving [FMC's] employ." (Id. ¶ 80.) Again, as pleaded, Plaintiff's allegations imply that all putative class members who have separated from FMC were not paid their full wages. Because the language of Plaintiff's allegations can reasonably be interpreted as setting forth universal violations, Plaintiff's own allegations support the reasonableness of FMC's assumptions in calculating its asserted amount in controversy.

Finally, the Court also considers that Plaintiff fails to rebut FMC's evidence. Relying on Dart, FMC contends Plaintiff must also submit evidence in support of its challenge to FMC's asserted amount in controversy calculation. (Opp'n at 7.) In Dart, the Supreme Court stated, "when a defendant's assertion of the amount in controversy is challenged . . . both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." 135 S.Ct. at 554. Plaintiff argues FMC is better positioned to determine the amount of controversy specifically, because it has access to and control over the records and information necessary to make such a calculation. (Reply at 2.) This argument is unavailing here, where Plaintiff could indicate the frequency and extent of the violations she purports to have suffered. Unutoa, 2015 WL 898512, at *3 ("Notably, Plaintiff fails to assert any different rate of violation or to submit any evidence indicating a contrary rate of violation. Plaintiff does not event submit his own declaration stating that he experienced less frequent rates of violation than those asserted by Defendants.")

Whether Plaintiff must submit evidence as part of the Motion appears to be an open question in the Ninth Circuit. See Ibarra, 775 F.3d at 1199-1200 ("Plaintiffs contend, on the other hand, that plaintiffs' motion to remand need not include evidence and is allowed to 'be based on the fact that Defendant's evidence is insufficient to meet the burden of proof,' and that requiring plaintiffs to submit evidence first 'would fundamentally switch to plaintiffs the burden of defeating subject-matter jurisdiction.' The Supreme Court did not decide the procedure for each side to submit proof on remand, and here we need not decide the procedural issue, either.") Indeed, a court in this district concluded that Dart did not alter the relevant procedure for challenges to federal jurisdiction in removal. See Mejia v. DHL Express (USA), Inc., No. CV 15-890-GHK (JCx), 2015 WL 2452755, at *2 (C.D. Cal. May 21, 2015). That district court

concluded that "[w]hile Plaintiff may rebut Defendant's evidence with his own evidence, he need not do so in order to prevail in his Motion." Id.

Although Plaintiff need not submit evidence to succeed on its Motion, the absence of such evidence in light of the generalized and indeterminate allegations in the Complaint—which can reasonably be interpreted to imply nearly 100% violation rates—the Court concludes FMC's assumptions of a limited but uniform violation rate based on those allegations, are reasonable. The Court also finds FMC presents sufficient evidence to establish the amount in controversy exceeds the jurisdictional minimum under CAFA by a preponderance of the evidence.

Pursuant to FMC's calculation, the amount in controversy for Plaintiff's overtime, meal period, rest break, non-compliant wage statements, and waiting time penalty claims exceeds $12,000,000.[1] The Court notes this calculation does not take into account Plaintiff's claims for unpaid minimum wages, unreimbursed business expenses, and violation of California Business and Professions Code § 17200 et seq. Accordingly, the Court DENIES the Motion.

## IV. CONCLUSION

For the reasons set forth above, the Motion to Remand by Plaintiff is DENIED and the hearing on June 26, 2017 is VACATED.

---

[1] Because FMC establishes by a preponderance of the evidence that the requisite $5,000,000 amount in controversy requirement under CAFA is satisfied, irrespective of whether attorney's fees are considered, the Court does analyze or consider FMC's estimate in the total amount in controversy.